UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| PATRICIA MEDELLIN §<br>§<br>*Plaintiff,* §<br>§<br>v. §<br>§<br>WING ENTERPRISES, INC. and §<br>LITTLE GIANT LADDER SYSTEMS, LLC §<br>§<br>*Defendant* § | CIVIL ACTION NO. 4:21-CV-3582 |

**PLAINTIFF'S ORIGINAL COMPLAINT & JURY DEMAND**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff PATRICIA MEDELLIN brings this action complaining of defendant, WING ENTERPRISES INC. and LITTLE GIANT LADDER SYSTEMS, LLC, and would respectfully show the Court the following:

## I.   NATURE OF ACTION

1. Ms. Medellin files this personal injury action against Defendants for products liability, negligence, gross negligence, breach of warranty, misrepresentation, and violations of the Texas Deceptive Trade Practices Act.

## II.   JURISDICTION & VENUE

2. Venue and jurisdiction are proper in this District because a substantial part of the events and omissions giving rise to the causes of action occurred here. 28 U.S.C. § 1391(b)(2). The citizenship of Ms. Medellin and Defendants are diverse. The amount in controversy exceeds the sum of $75,000, exclusive of interests and costs.

### III. PARTIES & SERVICE OF PROCESS

3. Plaintiff PATRICIA MEDELLIN is a resident of Harris County, Texas.

4. Defendant WING ENTERPRISES INC. does business in Texas and may be served through its registered agent: Art Wing; 1198 N. Spring Creek Place, Springville, Utah 84663, or wherever he may be found.

5. Defendant LITTLE GIANT LADDER SYSTEMS, LLC does business in Texas and may be served through its registered agent: Art Wing; 1198 N. Spring Creek Place, Springville, Utah 84663, or wherever he may be found.

### IV. BACKGROUND

6. On or about November 29, 2019, Ms. Medellin was using Defendant Wing Enterprises Inc.'s ("Wing") Little Giant Velocity M22 ladder, part number 15422-001 (the "subject ladder") outside of her home at 8311 Corey Woods Ct., Houston, Texas 77095. Ms. Medellin extended the ladder to increase height – as advertised, marketed, and instructed by Defendants. However, the subject ladder failed to lock in its extended position and caused her to fall from height sustaining severe injuries to her knee, arms, face, eye, neck, back, and other parts of her body/mind (the "Incident").

7. Further, Defendants defectively designed and manufactured the subject ladder, and provided improper warnings and instructions regarding the subject ladder. The defects that directly caused the ladder to fail and Ms. Medellin's resulting injuries included those related to the subject ladder's locking pins/rung fasteners. The United States Consumer Product Safety Commission

("CPSC") issued a recall on the subject ladder based on the defective locking pins/rung fasteners.[1] The subject ladder was not safe for its intended use.

## V. CLAIMS

A. **NEGLIGENCE & GROSS NEGLIGENCE**

8. Ms. Medellin realleges the foregoing paragraphs and incorporates the same as though fully set forth herein.

9. At all relevant times, Defendants were engaged in the business of manufacturing compounding, packaging, labeling, designing, distributing, testing, inspecting, constructing, fabricating, analyzing, recommending, merchandising, advertising, promoting, displaying, maintaining, repairing, and selling to members of the general public, including Ms. Medellin, the subject ladder. Ms. Medellin was the purchaser and/or user of the subject ladder in question. Defendants advertised and promoted the subject ladder as a multi-use ladder system.

10. Defendants owed a general duty of care to the users of its products, including Ms. Medellin, to properly manufacture, compound, package, label, design, distribute, test, inspect, construct, fabricate, analyze, recommend, merchandise, advertise, promote, display, maintain, repair, and sell the subject ladder.

11. Defendants were negligent and grossly negligent in manufacturing, compounding, packaging, labeling, designing, distributing, testing, inspecting, constructing, fabricating, analyzing, recommending, merchandising, advertising, promoting, displaying, maintaining, repairing, and selling the subject ladder.

---

[1] The CPSC recall of the subject ladder can be found here: https://www.cpsc.gov/zhT-CN/Recalls/2017/wing-enterprises-recalls-little-giant-ladders.

12. The subject ladder was in substantially the same condition as when it was manufactured and was being used in a manner intended and/or foreseeable at the time of the Incident.

13. Defendants were negligent and grossly negligent and the subject ladder and/or its components were defective and unreasonably dangerous because of:

- Failure to properly test the subject ladder and/or its components.
- Failure to properly manufacture the subject ladder and/or its components.
- Failure to properly design the subject ladder and/or its components.
- Selling the subject ladder without proper warnings.
- Selling the subject ladder without proper instructions.
- Failing to take reasonable steps to inform Ms. Medellin that the subject ladder was defective.
- Deviation from expected and/or promised quality, specifications, and/or performance, including of other mass labeled siblings.
- Failing to properly manufacture, design, construct, fabricate, produce, assemble, market, supply, distribute and/or sell the subject ladder.
- Failing to warn of latent dangers.
- Failing to realize the risks outweighed the benefits.
- The subject ladder's locking pins, rung fasteners, and all other components were inadequate to prevent collapse and/or foreseeable falling incidents, such as in this Incident.
- The subject ladder failed to incorporate other designs and technologies that could prevent collapse and/or foreseeable falling accidents. Defendants were aware of such designs and technologies, including superior designs and technologies used by other manufacturers and in other ladders.
- Failing to identify dangers.
- Failing to investigate complaints and/or issues raised with malfunctions and/or possible injuries correlating to use of the subject ladder.

- Other acts and omissions deemed negligent, grossly negligent, and/or creating an unreasonably dangerous condition.

14. Defendants' conduct when viewed objectively involved an extreme degree of risk considering the probability and magnitude of the potential harm to others, and Defendants had actual subjective awareness of the risk involved but proceeded anyway with conscious indifference for the rights, safety, and welfare of others. Furthermore, Defendants' actions were done with reckless disregard to a substantial risk of severe bodily injury. Ms. Medellin is therefore entitled to exemplary damages.

15. Defendants breached the above referenced duties and Defendants' breaches were the cause in fact, proximate cause, and/or producing cause of Ms. Medellin's injuries.

**B.   STRICT LIABILITY**

16. Ms. Medellin realleges the foregoing paragraphs and incorporates the same as though fully set forth herein.

17. At all relevant times, Defendants were engaged in the business of manufacturing compounding, packaging, labeling, designing, distributing, testing, inspecting, constructing, fabricating, analyzing, recommending, merchandising, advertising, promoting, displaying, maintaining, repairing, and selling to members of the general public, including Ms. Medellin, the subject ladder. Ms. Medellin was the purchaser and/or user of the subject ladder in question. Defendants advertised and promoted the subject ladder as a multi-use ladder system.

18. Defendants are strictly liable because when the subject ladder left the manufacturer and/or was placed into the stream of commerce, it was defective and unreasonably dangerous under Texas law and RESTATEMENT (SECOND) OF TORTS § 402. There were economically and technologically feasible safer alternative designs available that would have prevented the injuries

or significantly reduced the risk without impairing the subject ladder's utility, by the application of existing or reasonably achievable scientific knowledge. These failures rendered the subject ladder defective and unreasonably dangerous and exposed consumers like Ms. Medellin to an unreasonable and unnecessary risk of harm. The dangers were not readily apparent and were beyond that which would be contemplated by an ordinary user of the product with the ordinary knowledge common to the community as to the ladder's characteristics. Ms. Medellin is in a class of people that Defendants should have reasonably foreseen would be subject to harm caused by the defects.

19. Defendants advertised and marketed the subject ladder as safe for its intended use and free from defects. Defendants failed to give adequate warnings of the defects and provide proper instructions, which caused the subject ladder to be unreasonably dangerous. The subject ladder was unreasonably dangerous as marketed as a result of Defendants' failures, including the dangers that were known or, by the application of reasonably developed human skill and foresight, should have been known.

20. As a direct and proximate result of the defect in the subject ladder and the defects in the warnings, instructions, and marketing of the subject ladder by Defendants, Ms. Medellin sustained severe and permanent injuries. Therefore, Defendants are strictly liable to Ms. Medellin under applicable products liability law without regard to or proof of negligence or gross negligence.

C. **BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY; BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE; AND BREACH OF EXPRESS WARRANTY**

21. Ms. Medellin realleges the foregoing paragraphs and incorporates the same as though fully set forth herein.

22. Prior to and at the time Defendants and their agents, employees, and/or servants designed, manufactured, imported, and distributed the subject ladder for sale to members of the general public for use, as herein alleged, Defendants impliedly warranted to members of the general public, including Ms. Medellin, that the hereinabove described product was of merchantable quality and was fit for the use for which it was intended by Defendants as an extension ladder. Defendants impliedly warranted to members of the general public, including Ms. Medellin, that the subject ladder was fit for the purpose of an extension ladder. Through its web marketing and advertising, Defendants represented that they knew that the subject ladder was to be used as an extension ladder. Defendants further expressly warranted to members of the general public, including Ms. Medellin, that the subject ladder was of merchantable quality and was safe for the use for which it was intended by Defendants.

23. By this Complaint, Ms. Medellin hereby notifies Defendants of the breaches of express warranty.

24. At the time the subject ladder was manufactured, compounded, packaged, labeled, designed, distributed, tested, inspected, constructed, fabricated, analyzed, recommended, mechanized, advertised, promoted, displayed, and made available for sale by Defendant, the hereinabove described product was not fit for its intended purpose, nor of merchantable quality as warranted by Defendant. Further, there were alternative safer design/s that would, with reasonable probability, have prevented or significantly reduced the risk of the subject ladder's failure without substantially impairing the utility of the subject ladder and such alternative safer design was economically and technologically feasible at the time the subject ladder left the control of Defendant by the application of existing or reasonably achievable scientific knowledge.

25. Ms. Medellin relied on the skill and judgment of Defendant in using the hereinabove described product for the purpose for which it was intended to be used and, on the date of the subject incident, was using the hereinabove described product in its intended manner.

26. As a direct and proximate result of Defendants' breaches, Ms. Medellin sustained severe and permanent injuries.

D. **MISREPRESENTATION**

27. Ms. Medellin realleges the foregoing paragraphs and incorporates the same as though fully set forth herein.

28. Defendants made representations of material facts, as alleged herein, concerning the character and quality of the line of product sold by it, containing the subject ladder, of such a nature as to render the Defendants strictly liable for the catastrophic injuries and damages suffered by Plaintiff.

29. Defendants, acting by and thorough their agents, engaged in a course of advertising, marketing and promoting of the subject ladder that included express and implied misrepresentations of material fact concerning the character and quality of the subject ladder through advertising, marketing and promotional activities, the totality of which, taken as a whole, falsely represented that the subject ladder was suitable for use as an extension ladder and had been adequately tested for regular and foreseeable use and for safety.

30. This conduct, under the circumstances of this case, was undertaken by Defendants prior to the design and purchase of the subject ladder and directly and proximately caused Ms. Medellin's severe and permanent injuries, thus rendering the Defendants liable to Ms. Medellin under the common law and strict product liability causes of action.

### E.   VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT

31. Ms. Medellin realleges the foregoing paragraphs and incorporates the same as though fully set forth herein.

32. Ms. Medellin is a consumer under the Texas Deceptive Trade Practices Act ("DTPA") because Ms. Medellin is an individual who sought and acquired goods by purchase.

33. Defendants Wing Enterprises, Inc. and Little Giant Ladder Systems, LLC are entities that can be sued under the DTPA.

34. At all times material hereto, Defendants violated the DTPA when Defendants engaged in false, misleading, or deceptive acts or practices that Ms. Medellin relied on to her detriment. Specifically, Defendants (1) represented that the subject ladder had sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which it did not have; (2) represented that the subject ladder was of a particular standard, quality, grade, style, or model that it was not; and (3) failed to disclose information about the subject ladder that was known at the time of the transaction for Ms. Medellin's purchase of the subject ladder, which failure to disclose was intended to induce Ms. Medellin to enter into a transaction for the purchase of the subject ladder that she would not have entered into had the information been disclosed.

35. At all times material hereto, Defendants further violated the DTPA when Defendants breached express and implied warranties. Prior to and at the time Defendants and their agents, employees, and/or servants designed, manufactured, imported, and distributed the subject ladder for sale to members of the general public for use, as herein alleged, Defendants impliedly warranted to members of the general public, including Ms. Medellin, that the hereinabove described product was of merchantable quality and was fit for the use for which it was intended by Defendants as an extension ladder. Defendants impliedly warranted to members of the general

public, including Ms. Medellin, that the subject ladder was fit for the purpose of an extension ladder. Through its web marketing and advertising, Defendants represented that they knew that the subject ladder was to be used as an extension ladder. Defendants further expressly warranted to members of the general public, including Ms. Medellin, that the subject ladder was of merchantable quality and was safe for the use for which it was intended by Defendants.

36. At the time the subject ladder was manufactured, compounded, packaged, labeled, designed, distributed, tested, inspected, constructed, fabricated, analyzed, recommended, mechanized, advertised, promoted, displayed, and made available for sale by Defendant, the hereinabove described product was not fit for its intended purpose, nor of merchantable quality as warranted by Defendant. Further, there were alternative safer design/s that would, with reasonable probability, have prevented or significantly reduced the risk of failures without substantially impairing the utility of the subject ladder and such alternative safer design was economically and technologically feasible at the time the subject ladder left the control of Defendant by the application of existing or reasonably achievable scientific knowledge.

37. Ms. Medellin relied on the skill and judgment of Defendant in using the hereinabove described product for the purpose for which it was intended to be used and, on the date of the subject incident, was using the hereinabove described product in its intended manner.

38. It was impracticable for Ms. Medellin to give Defendants written notice under Texas Business & Commerce Code § 17.505(a), because Ms. Medellin needed to file this suit to prevent the expiration of the statute of limitations. Therefore, written notice was not required, pursuant to Texas Business & Commerce Code § 17.505(b).

39. Defendants acted knowingly and/or intentionally, which entitles Ms. Medellin to recover mental anguish damages under Texas Business & Commerce Code § 17.50(b)(1).

Defendants acted knowingly, which entitles Ms. Medellin to recover treble economic damages under Texas Business & Commerce Code § 17.50(b)(1). Defendants acted intentionally, which entitles Ms. Medellin to recover treble economic and mental anguish damages under Texas Business & Commerce Code § 17.50(b)(1).

40. Ms. Medellin is entitled to recover reasonable and necessary attorneys' fees for prosecuting this suit.

## VI.   DAMAGES

41. Ms. Medellin seeks damages within the jurisdictional limits of this Court in excess of $1 million, including:

- Compensatory damages
- Actual damages
- Consequential damages
- Lost future income
- Lost past income / earning capacity
- Lost future earning capacity
- Past loss of household services
- Future loss of household services
- Past loss of consortium
- Future loss of consortium
- Past medical care
- Future medical care
- Past pain and suffering
- Future pain and suffering
- Past and future loss of love and companionship and society
- Pecuniary loss sustained in the past and future, including loss of care, loss earning capacity, maintenance, support, services, advice, counsel, and any other reasonable contributions of pecuniary value
- Past and future cost of psychological treatment
- Past mental anguish
- Future mental anguish
- Past impairment
- Future impairment
- Past disfigurement
- Future disfigurement
- Interest on damages (pre- and post-judgment)

- Court costs
- Expert witness fees
- Deposition costs
- Attorneys' fees
- Exemplary damages
- Other relief as the Court may deem just and proper

## VII.    CONDITIONS PRECEDENT

42.    All conditions precedent have been performed or have occurred.

## VIII.    JURY DEMAND

43.    Ms. Medellin hereby requests a jury trial and has tendered the corresponding fee. FED. R. CIV. P. 38(b)(1).

## IX.    DEFENDANTS' CLAIMED AFFIRMATIVE DEFENSES

44.    Any affirmative defenses asserted by Defendants are factually and legally inapplicable and incorrect.

45.    The Texas punitive damages cap, which discriminates against the poor and the elderly, violates the Open Courts doctrine, the Texas Constitution, and/or the United States Constitution, including the Seventh Amendment and due process clauses and requirements.

## X.    RES IPSA LOQUITUR

46.    The doctrine of res ipsa loquitur applies in this case because the event is of a kind which does not ordinarily occur in the absence of negligence; other responsible causes are sufficiently eliminated by the evidence; and the negligence is with the scope of Defendant's duties.

## XI.    JOINT LIABILITY

47.    Pleading in the alternative, Defendants together as well as any alleged responsible third parties are jointly and severally and vicariously liable for Ms. Medellin's harm under the theories of joint and several liability; acting in concert; alter ego; respondeat superior; agency;

nondelegable duty; actual and apparent authority; participatory liability; aiding and abetting; joint venture; joint enterprise; and/or ratification.

## XII. MISNOMER AND ASSUMED NAME

48. In the event any parties are misnamed and/or not included herein, such entities are/were "alter egos." Ms. Medellin relies on Texas Civil Statutes Article 6133 to properly identify the corporate Defendants herein.

## XIII. INCORPORATION

49. All allegations and statements in all the various sentences and paragraphs in this document are incorporated into every sentence and paragraph herein.

## XIV. PRAYER

Ms. Medellin requests that the Court grant Ms. Medellin the relief requested above as well as all other just relief, and hold Defendants jointly and severally liable.

        Respectfully Submitted,

        MORROW & SHEPPARD LLP

        */s/ Patrick W. McGinnis*
           Patrick W. McGinnis
           Attorney-In-Charge for Plaintiff
           State Bar No. 24102179
           Federal Bar No. 301654
           All E-Service Copy To Both Of The Following:
           pmcginnis@morrowsheppard.com
           msfiling@morrowsheppard.com
           5151 San Felipe, Ste 100
           Houston, TX  77056
           713.489.1206 tel
           713.893.8370 fax

Of Counsel:

Nicholas A. Morrow (Morrow & Sheppard LLP)
State Bar No.  24051088
Federal Bar No. 611443
nmorrow@morrowsheppard.com
John D. Sheppard (Morrow & Sheppard LLP)
State Bar No.  24051331
Federal Bar No.  635193
jsheppard@morrowsheppard.com