United States District Court
Southern District of Texas
**ENTERED**
December 18, 2023
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| Patricia Medellin, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action H-21-3582 |
| | § | |
| Wing Enterprises, Inc., and | § | |
| Little Giant Ladder Systems, LLC, | § | |
| *Defendants.* | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court are Defendant's Motion to Exclude the Opinions of Stanley Kiska, ECF No. 30, and Defendant's Motion for Summary Judgment (MSJ), ECF No. 31. This case has been referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1). The court has considered the motions, the responses, and the applicable law. The motion to exclude is **DENIED**, and the court recommends that the motion for summary judgment be **DENIED**.

### *1. Factual Background*

Plaintiff Patricia Medellin brought this lawsuit to recover for severe injuries she sustained when she fell while using Defendant's Little Giant Velocity Ladder. 1st Am. Compl. ¶ 6, ECF No. 17; *see also* ECF No. 31-2 at 26. This multi-use ladder can be adjusted into multiple lengths and positions to form various types of climbing systems, including an extension ladder. *See* ECF No. 31-2 at 26. When used as an extension ladder, locking mechanisms called "Rock Locks" on either side of the ladder are used to secure the extension sections at the user's selected height. *See id.* Medellin alleges that the Rock Locks (version 2.1) in her

ladder "failed to lock in its extended position and caused her to fall from height[.]" 1st Am. Compl. ¶ 6, ECF No. 17.

On November 29, 2019, Medellin and her fifteen-year-old grandson, Benjamin Jones, were hanging Christmas lights along the roof of Medellin's home. *See* Medellin's Dep. at 30–34; ECF No. 32-1. They unfolded the ladder and extended it until hearing the Rock Locks "click" into place, indicating it was properly secure.[1] *Id.* at 33–34. At some point after Medellin climbed the ladder, Medellin heard clicking sounds as the top of the ladder retracted downward and the bottom of the ladder slid away from the house. *Id.* at 51–52. Jones also heard clicking sounds and looked over at Medellin as the ladder telescoped down. Jones Dep. at 20–21, ECF No. 32-3. Medellin fell with the ladder and landed face-down on it. Medillin Dep. at 56, ECF No. 32-1. Medellin alleges she sustained multiple bodily injuries. 1st Am. Compl. ¶ 6, ECF No. 17.

Medellin alleged that Defendant "defectively designed and manufactured" her ladder and "provided improper warnings and instructions[.]" 1st Am. Compl. ¶ 7, ECF No. 17. According to Medellin's expert witness, Stanley A. Kiska, P.E., the Rock Locks can be inadvertently set in a "false lock" condition such that "the extended section [of the ladder] is able to remain in place and may appear to be locked to the user, but, in fact, it is not properly completely secured." Kiska Dep. at 14, ECF No. 32-2. When in the false lock condition, the ladder appears to be locked into place, although it is not. *Id.*; *see also* ECF No. 32-4 at 107 ("A false locked version 2 rock lock provides the user with substantially similar audible, visual and tactile feedback as a fully locked rock lock.").

---

[1] As the court understands it, the ladder operates as a typical extension ladder. That is, portions of the ladder can extend and retract in a telescoping fashion. The Rock Locks then lock the extended section into place at the desired length.

The false-locked ladder will retract (i.e., shorten) under the user's weight when they try to climb it, causing the ladder and the user to fall. ECF No. 30-2 at 15–16.

Defendant moves to exclude Kiska's testimony and for summary judgment. ECF Nos. 30–31.

## 2. *Defendant's Motion to Exclude Kiska's Opinions*

The Federal Rules of Evidence require that a witness be "qualified as an expert by knowledge, skill, experience, training, or education" to provide expert testimony. Fed. R. Evid. 702. A qualified expert witness may testify if the proponent demonstrates that it is more likely than not that: (1) his scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue; (2) the testimony is based on sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case. Fed. R. Evid. 702(a)–(d).[2] The court understands Defendant's motion to be a challenge to the sufficiency of the facts and data Kiska relied on and to the reliability of the principles and methods Kiska used to reach his opinions. Defendant does not challenge Kiska's qualifications.

## A. *Poczynok's Opinions About Setting the Ladder Into Position in a False Locked Condition*

One of Kiska's opinions is that Medellin's ladder was capable of being placed in false locked condition on the ground and then being set into position for use and partially climbed without revealing the false locked condition to the user. ECF No. 30-2 at 11, 18–21. Kiska reached this opinion after, among other things,

---

[2] The court has applied, the revised Federal Rule of Evidence 702 which took effect on December 1, 2023.

reviewing Medellin's and Jones's deposition testimony, viewing photographs and videos of Medellin's ladder, and inspecting the ladder itself and the site of Medellin's accident. *Id.* at 3. Kiska also reviewed reports and video demonstrations of the testing conducted by another of Medellin's experts, Peter J. Poczynok, P.E., in another federal case. *Id.*; *see also* ECF No. 33-9 at 1 (describing the work he performed in *Davis v. Little Giant Ladder Sys., LLC*, 2:19-cv-00780-SPC-NPM (M.D. Fla.) (the *Davis* case)). Kiska also consulted with Poczynok. ECF No. 33-9 at 3; ECF No. 32 at 12.

The *Davis* lawsuit involved the same ladder model, the same version of Rock Locks, and the same false lock claim as in this case. ECF No. 30-3 at 6; ECF No. 32 at 12. Poczynok's testing and reports in *Davis*, which are attached to Poczynok's declaration in this case, ECF No. 33-9, showed that ladders with Rock Locks version 2.1 could be set in the false lock condition and positioned for use while still falsely locked. ECF No. 33-4 at 72–73; Poczynok Aff., ECF No. 33-9 at 3. Poczynok also showed that the false lock could disengage after a user's weight was applied to the ladder's rungs. ECF No. 33-4 at 62; ECF No. 30-2 at 18. In his declaration filed in this case, Poczynok also states that, in connection with his work on the *Davis* case, he "was able to place the locks in a false lock condition when [he] set up the ladder on the ground, then raised it into position." ECF No. 33-9 at 3. He further states that he has "on numerous occasions placed the locks in a false lock condition, on the ground, on the same model ladder that was involved in Ms. Medellin's incident, including Ms. Medellin's ladder, and [has] been able to set the ladders into a raised and upright position with the false lock intact." *Id.* Kiska reviewed and incorporated Poczynok's testing and opinions into his analysis of Medellin's accident. ECF No. 30-2 at 18.

4

Although Defendant raises numerous complaints about how Kiska has relied on Poczynok's testing (discussed below), the court notes that Defendant has not moved to exclude Poczynok's opinions. Poczynok is designated as an expert witness in this case and will be permitted to testify at trial. Specifically, he will be permitted to testify about his opinion that the ladder can be placed into a false lock condition on the ground and then raised into position without disturbing that condition. *See* ECF No. 33-9 at 2. Defendant explains that it has made the strategic choice to "utilize [Poczynok's] testing videos to highlight elements absent from Ms. Medellin's accident." ECF No. 34 at 1. Moreover, Defendant does not object to Kiska relying on Poczynok's testing. Rather, Defendant objects only to Kiska's opinions that Medellin was able to (1) set her ladder into a 'false lock' condition on the ground and (2) raise it into position without disturbing the condition." ECF No. 34 at 2.

Kiska relied on several sources of information as well as his professional engineering experience in this very field to form the objected-to opinion. He relied on Poczynoc's testing, his own inspection of the ladder, and the eye-witness testimony of both Medellin and her grandson. *See generally* ECF No. 30-2; *see also* ECF No 32-2 at 130–33, 150–53. Defendant has presented no valid reason why Kiska's reliance on these sources of information was improper. It is entirely proper for Kiska to rely on Poczynok's opinions. The facts and data on which an expert relies may include the opinions of other experts. Fed. R. Evid. 702 Advisory Comm.'s Notes to 2000 Amendments ("The term 'data' is intended to encompass the reliable opinions of other experts."); *see also* Fed. R. Evid. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed."); *Earnest v. Sanofi U.S. Servs. (In re Taxotere (Docetaxel) Prods. Liab. Litig.)*, 26 F.4th 256, 269 n.10 (5th Cir.

2022) ("[W]e likewise do not conclude that an expert may not rely on another expert's (or a lay witness's) admissible testimony.").

Defendant is very critical of Poczynok's testing methodology and opinions but seems to raise those complaints by arguing that Kiska should not be able to rely on Poczynok's opinions, as opposed to directly seeking to exclude Poczynok as an expert. *See, e.g.* ECF No. 30 at 17–18 (arguing in the context of seeking to exclude Kiska's opinions that Kiska cannot rely on Poczynok's opinions because there "is no established protocol or general acceptance of such testing"). Defendant has made a strategic choice not to challenge Poczynok as an expert and has stated that part of its defense will be to cross examine Poczynok at trial. Thus, to the extent Defendant is seeking to challenge Poczynok's opinions under the guise of an objection to Kiska's reliance on those opinions, that challenge is not before the court at this juncture.

Defendant argues that Kiska was required to validate or replicate Poczynok's testing before he could rely on it. The court is not aware of such a requirement. As discussed in the previous paragraph, Kiska need only ensure that the other experts on which he relies are reliable. Poczynok's reports meet the standard. His reports are quite detailed, include photos, describe his testing, and show his methodology. Kiska reviewed these materials and incorporated them into his analysis. ECF No. 30-2 at 3, 18; ECF No. 32 at 12. Kiska also consulted with Poczynok. ECF No. 33-9 at 3; ECF No. 32 at 12.

Defendant also argues that Poczynok's testing cannot be reliably applied to the context of Medellin's accident because: (1) Medellin's roof had a more distinct pitch than the roof on which Poczynok did his testing; (2) in four of the ten tests Poczynok performed, the test ladder was extended well beyond the roofline, which Kiska concedes makes those tests inapplicable to Medellin's accident; (3) of the remaining applicable six tests, only two showed

the ladder contract and lose contact with the roof such that the climber fell; (4) in the two tests where the climber fell, the ladder did not slide straight back as Medellin's did but instead rotated out from under the climber because of the roof's pitch; and (5) none of the ten tests created a "clicking" sound as described by Medellin and Jones. ECF No. 30 at 14–17.

The court is not convinced that the above distinctions between Poczynok's tests and Medellin's accident make the tests inadmissible. Even if Poczynok's tests were intended to recreate Medellin's accident—which they were not—recreations must only be "substantially similar," with conditions not precisely reproduced but "only so nearly the same as to provide a fair comparison." *United States v. Norris*, 217 F.3d 262, 270 (5th Cir. 2000). The court finds that the conditions of Poczynok's testing are substantially similar to the conditions of Medellin's fall. Poczynok used the same model ladder as Medellin (with Rock Locks 2.1), configured it as an extension ladder, and positioned it against a pitched roof above the driveway. ECF No. 33-9 at 3; *see also* Poczynok's Report, ECF No. 32-4 at 55–57. The court also notes that Kiska critically evaluated Poczynok's tests and disregarded those which he found to be inapplicable to Medellin's accident. ECF No. 32-2 at 40. The distinctions raised by Defendant are not so great to make Poczynok's tests an unfair comparison to Medellin's accident. Any distinctions between Medellin's accident and Poczynok's testing may be demonstrated through cross examination. *Cf. Armstrong v. Wing Enters., Inc.*, No. 4:18-CV-1238, 2022 WL 950873, at *2 (S.D. Tex. March 30, 2022) (concluding in the context of a very similar case that "inconsistencies between the testimony of Poczynok, the evidence, and expert testimony offered by Wing Enterprises may affect Poczynok's credibility before the jury. But they don't render his testimony inadmissible").

### B. Kiska's Opinions on Design Defect

Defendant argues that Kiska's opinions on design defect should be excluded because they are unreliable and irrelevant. ECF No. 30 at 18. Specifically, Defendant argues that Kiska has provided no evidence or testing to demonstrate that his alternative design would have prevented Medellin's accident. *Id.*

To prevail on a design defect claim, the plaintiff must present (among other things) a safer alternative design that "would have prevented or significantly reduced the risk of the [plaintiff's] personal injury . . . without substantially impairing the product's utility." Tex. Civ. Prac. & Rem. Code § 82.005(a)–(b)(1). Although the alternative design must be tested before a jury can conclude that it would prevent or reduce the risk of injury, a plaintiff need not build and test a prototype. *Sims v. Kia Motors of Am., Inc.*, 839 F.3d 393, 407 (5th Cir. 2016) (quoting *Casey v. Toyota Motor Eng'g & Mfg. N. Am., Inc.*, 770 F.3d 322, 332 (5th Cir. 2014); *Gen. Motors Corp. v. Sanchez*, 997 S.W.2d 584, 592 (Tex. 1999)). Instead, testing "can be as simple as applying math and physics to establish the viability of a design." *Id.*

Kiska opines that the Rock Locks 2.1 are defective in design because: (1) the aluminum barrel pins pivot into place; and (2) the locks lack contrasting color to signal incomplete insertion of the barrel pins. ECF No. 30-2 at 11, 19. Kiska's alternative design would use: (1) steel barrel pins that move linearly/perpendicularly into place; and (2) are colored red. *Id.* at 8, 10. Defendant argues that Kiska has not tested the proposed design and thus has no evidence that it would have prevented or significantly reduced the risk of Medellin's injury. ECF No. 30 at 19–20.

Kiska tested the above alternative design by applying engineering principles and analyzing as a professional engineer how the current and proposed designs would function in practice. In support of the steel barrel pin with perpendicular movement,

Kiska compared the coefficient of friction between an aluminum barrel pin with that of a steel barrel pin. ECF No. 30-2 at 8. Kiska stated that "aluminum barrel pins are . . . undesirable because of the higher coefficient of friction that exists between sliding parts (aluminum on aluminum vs. aluminum on steel), which can adversely affect proper locking." *Id.* Kiska also determined that "[T]he friction coefficient of the aluminum-to-aluminum interface . . . would be approximately twice as great as aluminum-to-steel, and thus mak[e] it more difficult for the locking pins to engage properly, and therefore, more likely to 'falsely lock.'" *Id.*

Kiska also proposed using barrel pins that approach the rung holes perpendicularly, such as those used in version 3.0 of Defendant's Rock Locks. Although Kiska did not take measurements of a ladder equipped with Rock Locks 3.0, Kiska testified that the perpendicular design is "more forgiving all things being equal" and "[m]ore favorable in terms of properly engaging and not hanging up on the . . . inner section swage [and false locking]." ECF No. 33-2 at 18. Kiska explained that, based on the design's operation, the angled or arcing approach of the Ladder's barrel pins requires a "more exacting alignment between the sections" to get the barrel pins to properly engage beyond a false lock. *Id.* The court concludes that Kiska should be permitted to testify about his proposed alternative design and that any weaknesses in his analysis can be addressed through cross-examination.

As for the red coloring on the barrel pin, Defendant argues that Kiska did not test the proposed design, that he is not a human factors expert, and that he did not cite to any study, testing, or modeling to demonstrate that a colored barrel pin would reduce the risk of injury. But Kiska is an expert in this field and is familiar with the use of coloration to highlight safety concerns. He opines that "[m]any manufacturers use creative coloring (particularly the

color red) as a means to draw attention to locking components as a means to communicate to users that a safety problem may exist." ECF No. 30-2 at 10. Kiska's report provided side-by-side photographs to demonstrate the visual differences in the Ladder's design and the alternative design. *Id.* at 11. Kiska noted that when the colored pin is completely inserted, the red color would not be visible to the user and would indicate that the lock is properly engaged. *Id.* at 11. Kiska also pointed to one of Defendant's prior ladder designs that used colored locks to indicate that the locking mechanism was not properly engaged. *Id.* at 10. Again, the court recognizes the weaknesses that Defendant has pointed out but does not believe the arguments raised are sufficient to completely exclude Kiska as an expert. Defendant can use cross-examination to demonstrate those weaknesses to the jury.

### C. Kiska's Opinions on Manufacturing Defect

Defendant argues that Kiska's opinions on manufacturing defects are irrelevant because Kiska has failed to demonstrate that: (1) the identified manufacturing defects existed when Medellin's ladder left the manufacturer; and (2) the manufacturing defects caused Medellin's accident. ECF No. 30 at 20–21.

In a manufacturing defect claim, the plaintiff bears the burden to prove (among other things) that a product was defective when it left the manufacturer and that the defect was a producing cause of the plaintiff's injuries. *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 42 (Tex. 2007) (citing *Ford Motor Co. v. Ridgway*, 135 S.W. 3d 598, 600 (Tex. 2004)).

Kiska's report identified two manufacturing defects: (1) the hardness of the ladder's feet exceeds the product specification's upper tolerance limit; and (2) the width of the ladder's outer section assembly exceeds the product specification's upper tolerance limit. ECF No. 30-2 at 9–10. Defendant argues that

Kiska has not demonstrated that Medellin's ladder was defective when it left the manufacturer.

However, Kiska's report states that "[I]nspection of the subject ladder shows that it was not manufactured to specification[,]" and Medellin's deposition testimony—which Kiska reviewed—tends to demonstrate that the ladder's condition was unchanged between the time it was manufactured and when Medellin's accident occurred. ECF No. 30-2 at 8. For example, Medellin explained that she purchased her ladder in November of 2017 and used it only twice before her accident occurred: once in 2017 and once in 2018. ECF No. 33-1 at 23, 25. Medellin stored the ladder in her garage in its most compact configuration—fully retracted on both sides and folded in half. *Id.* at 33. No one else ever used the ladder, and it had not been used after Medellin's accident. *Id.* at 24. Kiska inspected Medellin's ladder and found it to be in generally good condition. ECF No. 30-2 at 5. Defendant does not challenge Medellin's testimony regarding her storage or use of the ladder or point to evidence that the ladder's condition changed between its manufacture and Medellin's accident or between Medellin's accident and Kiska's inspection. Whether the identified manufacturing defects existed when the ladder left the factory is a question for the jury.

As for the causal connection between the manufacturing defects and Medellin's accident, Kiska explained that the hardness of the ladder's feet exceeds the product specifications, and that harder material provides less slip resistance. ECF No. 30-2 at 10. Kiska opined that "The likelihood of bottom slip out of a ladder is greater when its feet are composed of a harder material. This was the case with [Medellin's] ladder[.]" *Id.* at 20. Kiska reviewed the Ladder's specifications, which required slip-resistant feet "with a 'Shore A durometer of 80+/-2.'" *Id.* at 10. Thus, the maximum durometer reading, Kiska explained, would be 82 Shore A, but

Medellin's ladder's left foot measured 91-92 Shore A while the right foot measured 92-93 Shore A. *Id.* Kiska stated that the feet on Medellin's ladder would not be expected to provide as much resistance to slipping out as feet that were within the proper specifications. *Id.* Thus, Kiska has tied the out-of-specification hardness of the ladder's feet to its propensity to slide out from under the user.

Kiska also determined that the outer assembly of Medellin's ladder exceeds the product specification's upper tolerance limit. ECF No. 30 at 9. Kiska explained that the specification drawing sets the Ladder's outer assembly width at 15.00 inches, +0.00/-0.06, "which means under no circumstances should the width exceed 15.00 inches." ECF No. 30-2 at 9. Kiska measured Medellin's ladder "[a]t the end of each section . . . [a]t the Rock Locks, [a]t the [second] rung down from the end[, and] [a]t the point just before the rail begins to flare[.]" *Id.* Kiska found that "Both extension sections of [Medellin's] ladder exhibited widths greater than that allowed by the manufacturing drawings. This increased clearance would allow for even greater misalignment of the two sections and of their mating parts." *Id.* Kiska further explained that:

> While a certain degree of clearance is required to allow the sections to slide freely, the greater the clearance, the more the inner section can shift relative to the outer section, thus adversely affecting the alignment of the locking pins[] and exacerbating the ability of the pins to be directed into their respective rung holes.

*Id.* Kiska has tied his measurements showing the ladder was out of specification to the propensity of the ladder to become false locked.

For all of these reasons, Defendant's motion to exclude Kiska as an expert, ECF No. 30, is **DENIED**.

### 3. *Defendant's Motion for Summary Judgment*

Defendant has moved for summary judgment, largely on the same grounds raised in the motion to exclude Kiska's opinions. Defendant again argues that Medellin failed to establish causation, failed to present a safer alternative design, and failed to connect the manufacturing defects to her accident. ECF No. 31 at 2, 15, 20, 22.

### A. *Summary Judgment Standard*

"Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the nonmovant, 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Davenport v. Edward D. Jones & Co.*, 891 F.3d 162, 167 (5th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). No genuine issue of material fact exists if a rational jury could not find for the nonmoving party based on the complete record. *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 455 (5th Cir. 2019) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Initially, "[t]he movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). If this burden is met, the nonmovant must then "go beyond the pleadings," using competent summary judgment evidence to cite "specific facts" showing a genuine issue for trial. *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 357 (5th Cir. 2017) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).

The court reviews all evidence and reasonable inferences in the light most favorable to the nonmoving party. *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress*

*& Co.*, 398 U.S. 144, 157 (1970)). The court, however, does not have a duty "to search the record for material fact issues." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010) ("Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports [the] claim.").

"[C]onclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence'" are not enough to defeat a properly supported motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). "[T]here must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### B. Summary Judgment Analysis

Defendant first argues that "Plaintiff's theory represents only a guess as to what occurred on the date of [the] accident and is contravened by her testimony and the physical evidence at the scene." ECF No. 31 at 16. Medellin testified that she read her ladder's instructions and warnings, that she was familiar with its operation, that she had used it before, and that she and Jones double-checked the Rock Locks each time they changed the ladder's configuration. ECF No. 33-1 at 23, 25, 35, 70, 74. Defendant argues that Medellin's testimony "contravene[s] any suggestion that she failed to fully engage the Rock Locks or that she could not recognize a 'false lock' condition." ECF No. 31 at 17. However, as Kiska stated, a false-locked ladder will appear to be properly locked to the user. ECF No. 32-2 at 6. The entire case arises from that allegation, and Medellin has provided evidence supporting that allegation. Despite their care and double checking the ladder's Rock Locks, Medellin and Jones allege that they observed the ladder retract and heard clicking noises as it did so.

14

ECF No. 33-1 at 53; ECF No. 33-3 at 21–22. Kiska opined that "[t]he clicking noises (heard by both [Medellin and Jones]) is most consistent with a scenario in which a ladder is suddenly retracting (telescoping), as the barrel pins are sliding past the rung tube swages." ECF No. 30-2 at 20.  For these reasons, and contrary to Defendant's assertion, Medellin's allegations are not mere conjecture, guesses, or wholesale speculation warranting summary judgment.

Defendant also argues that Medellin's version of events is speculative and doubtful because Defendant's expert, Joseph C. Musto, Ph.D., P.E., opined that the false lock condition "requires a delicate and unstable balance" and that when the condition can be achieved, it "is temporary and unstable; the act of lifting the ladder from the ground into position causes the lock to fully engage before the ladder can be put into position." ECF No. 31-4 at 10. However, Poczynok and Kiska disagree with Musto and believe that the ladder can be put into position while false-locked. *See* ECF No. 30-2 at 19; ECF No. 32-4 at 72–73; ECF No. 33-9 at 3. As discussed in Part 2, these opinions will not be excluded. Accordingly, there is a material fact issue requiring resolution at trial. *See Watson v. Allstate Tex. Lloyd's*, 224 Fed. Appx. 335, 342 (5th Cir. 2007) (stating that summary judgment is typically presumptively inappropriate in cases presenting a "battle of the experts").

Defendant next raises the same design defect argument made in its motion to exclude Kiska's opinions: that Kiska did not test his proposed alternative design and, therefore, Medellin has no evidence that the alternative design would have prevented or significantly reduced the risk of injury. ECF No. 31 at 20–21. For the reasons stated in Part 2.B., Kiska's alternative designs are sufficiently tested, and Kiska's opinions are relevant and reliable.

Therefore, Medellin has sufficient evidence to survive summary judgment on her design defect claim.

Finally, Defendant again argues that there is no causal connection between the manufacturing defects and Medellin's accident. ECF No. 31 at 22. However, this time Defendant argues about: (1) the location where the outer assembly's width exceeds product specifications; and (2) how the ladder's foot hardness contributed to the accident.

As to the ladder width, Defendant states that the outer assembly of Medellin's ladder was within specification "at the top (where the [specification] drawing specifies the width) and at the first rung, where the Rock Locks attach[,]" and argues that Kiska "cannot explain how the Rock Locks would have been more likely to false lock because of the width of the outer section in any area, much less at a point several inches away from the Rock Locks." ECF No. 31 at 24–25. Defendant also argues that Kiska cannot properly quantify the effect of the greater width because he did not take measurements of the inner section's dimensions. *Id.* at 25–26.

However, as discussed in Part 2.C., Kiska explained that the greater clearance allowed for greater misalignment of the ladder's sections and their mating parts, thus adversely affecting proper locking. ECF No. 30-2 at 9. At his deposition, Kiska even elaborated on how the outer assembly's excessive width—even below the Rock Locks—could affect the ladder's functionality. ECF No. 32-2 at 31. Kiska explained that:

> Even though you may have 15 inches or less at the rock locks, if you have the inner section [that must] pass through a portion of the outer section, [that] goes beyond 15 inches, it's that much further that it can become askew potentially and thus affect the ability for the rock locks to properly engage the rung.

*Id.* Although the ladder's inner and outer sections interact with one another, Kiska explained that he did not measure the ladder's

inner section because "the inner sections are not dimensioned the same way the outer sections are[,]" and there were no drawings "that put a limiting factor on how wide . . . or how narrow [the inner sections] could be and still be in tolerance." *Id.* Based on the foregoing, Kiska did explain how the outer assembly's width below the Rock Locks could affect the ladder's functioning. Defendant's disagreements with or criticism of Kiska's opinions do not warrant summary judgment. Instead, such criticism is more appropriately raised through cross examination. Fed. R. Evid. 702 Advisory Comm.'s Notes to 2023 Amendments ("[O]nce the court has found it more likely than not that the admissibility requirement has been met, any attack by the opponent will go only to the weight of the evidence.").

Defendant also argues that Kiska "performed no calculations to ascertain the role [that] foot hardness might have played in the accident" and "performed no testing to distinguish the performance of a ladder foot within specification . . . versus a foot that tested harder." ECF No. 31 at 25. As discussed in Part 2.C., Kiska explained that the harder the foot's material, the less slip resistant the foot will be. *See* ECF No. 30-2 at 10. Therefore, Kiska explained, Medellin's ladder would not provide as much slip resistance as feet that were within the hardness specifications. *Id.* The court found Kiska's opinions to be admissible. Again, if Defendant challenges the degree to which Medellin's ladder would be less slip resistant, Defendant may highlight that point during Kiska's cross examination. The court recommends that Defendant's Motion for Summary Judgment, ECF No. 31, be **DENIED.**

### 4. *Conclusion*

For the foregoing reasons, Defendant's Motion to Exclude the Opinions of Stanley Kiska, ECF No. 30, is **DENIED.** The court

further recommends that Defendant's Motion for Summary Judgment, ECF No. 31, be **DENIED**.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn,* 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on December 17, 2023.

Peter Bray
United States Magistrate Judge